RECORD NO. 14-1690

# IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

## UNITED STATES EX REL. MARK W. PRINCE,

*Plaintiff-Appellant,*

v.

## VIRGINIA RESOURCES AUTHORITY,

*Defendant-Appellee.*

SHENANDOAH COUNTY BOARD OF SUPERVISORS
*Defendant*
U. S. BANK NATIONAL ASSOCIATION
*Defendant*
SUNTRUST BANK
*Defendant*
SUNTRUST EQUIPMENT FINANCE & LEASING CORPORATION
*Defendant*

_____

## OPENING BRIEF OF PLAINTIFF-APPELLANT

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA AT HARRISONBURG**

**Bradley Glenn Pollack**
**ATTORNEY AT LAW**
**753 South Main Street**
**Woodstock, Virginia 22664**
**(540) 459-8600 (Telephone)**
**bpollack@shentel.net**

**Counsel for Plaintiff-Appellant**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
_____

**BRIEF OF APPELLANT MARK W. PRINCE**
_____

No. 14-1690
U. S. ex rel. Mark W. Prince v. Virginia Resources Authority
5:13-cv-00045-MFU
_____

Bradley G. Pollack
753 South Main Street
Woodstock, VA 22664
bpollack@shentel.net
540-459-8600
540-459-8670 (fax)
Virginia State Bar No. 25290

Dated September 24, 2014

# **TABLE OF CONTENTS**

Table of Authorities…………………………………………………….. 3

Jurisdictional Statement………………………………………………….... 6

Statement of Issues…………………………………………………….... 6

Statement of the Case…………………………………………………... 7

Summary of the Argument…………………………………………….... 7

The Argument……………………………………………………. 11

      A. Standard of Review……………………………………… 11
      B. Motion to Intervene Was Erroneously Denied………………………… 11
      C. Appellee Failed to Timely Raise the Preclusion Defense…………….. 12
      D. 28 U.S.C. § 1738 - Full Faith and Credit……………………………. 14
      E. Federal False Claims Act 31 U.S.C. §§3729 – 3733(d)……………….. 14
      F. VRA is Not in Privity with Banks Because the VRA was
         Immune From Suit…………………………………………… 16
      G. Issue Preclusion…………………………………………….. 17
      H. Claim Preclusion……………………………………………. 30
      I. Dismissal Against Unserved Defendants For Failure to
         Prosecute Was In Error ……………………………………… 31
      J. District Court Improperly Denied Reconsideration Pursuant
         to Rule 59(e)………………………………………………… 34

Conclusion…………………………………………………………. 36

Request for Oral Argument…………………………………………… 36

Certificate of Service…………………………………………………. 37

Certificate of Compliance…………………………………………….. 38

<u>**TABLE OF AUTHORITIES**</u>

**Supreme Court Cases**

*Andrus v. Glover Constr. Co.,*
    446 U.S. 608 (1980)………………………………………………………… 15

*Connecticut Nat'l Bank v. Germain*,
    503 U.S. 249 (1992)………………………………………………………… 15

*Consumer Product Safety Commission et al. v. GTE Sylvania, Inc. et al.,*
    447 U.S. 102 (1980)………………………………………………………… 15

*Kremer v. Chemical Construction Corporation*,
    456 U.S. 461 (1982)………………………………………………………… 31

*Richards v. Jefferson County Alabama*,
    517 U.S. 793 (1996)………………………………………………………… 12

*Taylor v. Sturgell*
    128 S. Ct. 2161 (2008)…………………………………………………... 11, 12

*Vermont Agency Nat. Resources v U.S.*,
    529 U.S. 765 (2000)………………………………………………………… 16

**Federal Circuit and District Court Cases**

*Blystone v. Horn*,
    664 F.3d 397 (3rd Cir. 2011)………………………………………………… 35

*Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*,
    693 F.3d 1195 (10th Cir. 2012)……………………………………………… 36

*Ga. Pac. Consumer Prods., LP v. Von Drehle Corp.*,
    710 F.3d 527 (4th Cir. 2013)………………………………………………… 13

*In re Natural Gas Royalties Qui Tam Litigation*,
    467 F. Supp. 2d 1117 (D. Wyo., 2006)……………………………………… 33

*Martin-Bangura v. Virginia Dept. of Mental Health*,
　　640 F. Supp. 2d 729 (E.D. Va., 2009)……………………………….. 14, 18, 19

*Robinson v. Wix Filtration Corp. LLC*,
　　599 F.3d 403 (4th Cir. 2010)………………………………………………. 34, 35

*United States ex rel. Feldman v. Van Gorp*,
　　697 F.3d 78 (2nd Cir. 2012)…………………………………………… 23

*U.S. v. Rogan*,
　　517 F.3d 449 (7th Cir. 2008)………………………………………… 23, 24

*U.S. ex rel. Rost v. Pfizer, Inc.*,
　　507 F.3d 720 (1st Cir. 2007)…………………………………………… 24

*U.S. ex rel. Lamers v. City of Green Bay*,
　　168 F.3d 1013 (7th Cir. 1999)……………………………………………... 25

## State Cases

*Clodfelter v. Commonwealth*,
　　218 Va. 98 (1977)
　　Reversed on other grounds, 218 Va. 619 (1977)………………………… 26

*Davis v. Commonwealth*
　　Record No. 1873-12-2 (Va. App., 2014)………………………………… 29

*Jones v. Commonwealth*,
　　217 Va. 231 (1979)……………………………………………………... 28

*Leeman v. Troutman Builds, Inc.*,
　　260 Va. 202 (2000)……………………………………………………... 16

*Simon v. Commonwealth*,
　　220 Va. 417 (1979)……………………………………………………… 26, 28

*Virginia Imports v. Kirin Brewery*,
　　650 S.E.2d 554 (Va. App., 2007)………………………………………… 30

*Whitley v. Commonwealth*,
 260 Va. 482 (2000)……………………………………………….…..... 21

## Federal Statutes and Rules

28 U.S.C. § 1291…………………………………………………….. 6

28 U.S.C. § 1738…………………………………………………… 14

31 U.S.C. § 3729………………………………………… 14, 22, 25

Federal Rule of Civil Procedure 41(b)………………………………….. 6, 10

Federal Rule of Civil Procedure 59(e)…………………………………… 34

## State Constitution Articles, Code, and Rules

VA Const. art. 10, §9(d)…………………………………………... 8

VA Const. art. 10, §10……………………………………………… 21

Virginia Code § 8.01-216.8……………………………………… 17

Virginia Code § 15.2-1816……………………………………... 24, 25

Virginia Supreme Court Rule 1:6………………………………… 26, 27

## Jurisdictional Statement

(A) The basis for the district court's subject-matter jurisdiction was the Federal False Claims Act, U.S. Code, Title 31, Subtitle III, Chapter 37, Subchapter III, 31 U.S. Code § 3729, et seq. Defendant filed false statements to get federal benefits under the Build America Bonds program;

(B) The basis for the court of appeals' jurisdiction is 28 U.S.C. § 1291, as the U.S. District Court for the Western District of Virginia has entered its final order.;

(C) On July 10, 2014, the U.S. District Court for the Western District of Virginia entered its final order. Appellant Prince had previously noted his appeal on May 14, 2014; and

(D) This appeal is from a final order or judgment that disposes of both parties' claims.

## Statement of Issues

I.   Whether the District Court erred in denying the motion to intervene by Michael A. Prince.

II.   Whether the District Court erred in ruling that all of his claims were barred with prejudice due to collateral estoppel.

III.   Whether the District Court erroneously dismissed with prejudice this case against the unserved defendants for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

IV. Whether the District Court erred in ruling that there was no basis to alter or amend the court's judgment under rule 59(e).


## Statement of the Case

I. On September 3, 2013, Appellant Mark W. Prince filed his Motion to Amend Complaint. Docket # 11. This *qui tam* action was brought by the Relator, Mark W. Prince ("Prince").  It was instituted because of irregularities in financial documents rooted out by the Relator seeking to vote on debt incurred by his county per the Virginia Constitution. The merits of this case have never been addressed by any court.

To summarize the Amended Complaint, he Virginia Resources Authority "VRA" has issued bonds requesting federal subsidies through the Build America Bond Program before having the authority to do so. The law enabling this action, Virginia Code § 15.2-1816 (Power to enter into financing agreements), in addition to clearly being contrary to the Constitution of Virginia, wasn't even passed into law until 2011, years after the application was submitted for the federal Build America Bond program. Federal funds were dispersed and continue to be dispersed to the VRA for these illegal bond issuances.

Furthermore, moral obligations are being issued as the financial underpinnings or structure for the bonds sold by local Virginia governments for which they

are receiving federal subsidies. The Dillon rule requires that in order for local governments to exercise a power, that power must be given to the local government by the State or Constitution before it can be exercised. Nothing in the Virginia Constitution or Code authorizes local Virginia governments to issue moral obligations or obligations that do not incur the full faith and credit of issuing local Virginia governments.

In contrast, the Commonwealth of Virginia has authorization from the Virginia Constitution under Article 10, Section 9(d).  It provides: "Obligations to which section not applicable. The restrictions of this section shall not apply to any obligation incurred by the Commonwealth or any institution, agency, or authority thereof if the *full faith and credit of the Commonwealth is not pledged or committed to the payment of such obligation*."

These "moral" obligations allow Constitutional bypass of the restrictions on legitimate State debt by issuing bonds that do "not incur the full faith and credit," and its use has been illegally transferred, in violation of *expressio unius est exclusio alterius* and rules of statutory construction, for use by local Virginia governments. Without this "moral obligation" issued by local government, the banks would not loan money for these projects, making this a vital, and unlawful, link for financing. In essence, these moral obligations and lease purchase contracts are al-

lowing local governments to freely issue bonds for any project at almost twice the interest rate of a full faith and credit bond.

Furthermore, the VRA is restricted by Virginia's Constitution from becoming interested in any work of internal improvement, of which each of these contracts are, and the fact that it is an essential internal improvement is so specified in the contracts. The bonds were issued by the VRA for local government buildings, courthouses and other projects in violation of the following Constitutional mandate to finance industrial development and expansion :

> Article X, Section 10. Lending of credit, stock subscriptions, and works of internal improvement.
>
> Neither the credit of the Commonwealth nor of any county, city, town, or regional government shall be directly or indirectly, under any device or pretense whatsoever, granted to or in aid of any person, association, or corporation; nor shall the Commonwealth or any such unit of government subscribe to or become interested in the stock or obligations of any company, association, or corporation for the purpose of aiding in the construction or maintenance of its work*; nor shall the Commonwealth become a party to or become interested in any work of internal improvement*, except public roads and public parks, or engage in carrying on any such work; nor shall the Commonwealth assume any indebtedness of any county, city, town, or regional government, nor lend its credit to the same. This section shall not be construed to prohibit the General Assembly from establishing an authority with *power to insure and guarantee loans to finance industrial development and industrial expansion* and from making appropriations to such authority. *Emphasis added.*

By issuing their own bonds that are supported financially by the lease purchase agreements, the VRA assumed the indebtedness of local government, thereby triggering a violation of the following subsection of Article X, Section 10: "Nor

shall the Commonwealth assume any indebtedness of any county, city, town, or re-
gional government, nor lend its credit to the same."

II.   On October 7, 2013, the District Court granted the Motion to Amend.
      Docket # 13.

III.  On February 18, 2014, Michael A. Prince filed a motion to intervene. (JA p.
      173)

III.  On April 15, 2014, by Memorandum Opinion, the District Court ruled that
      all of his claims were barred with prejudice due to collateral estoppel. Docket
      # 34, pp. 3, 6 -11.

IV.   On page 11 of the aforesaid Memorandum Opinion, the District Court de-
      nied the motion to intervene on behalf of Michael A. Prince. Docket # 34, p.
      11.

V.    On pages 11 - 15 of the aforesaid Memorandum Opinion, the District Court
      dismissed with prejudice this case against the unserved defendants for failure
      to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Docket # 34,
      pp. 11- 15.

VI.   On May 2, 2014, Appellant Prince moved for reconsideration. Docket # 37.

VII.  On July 10, 2014, the District Court ruled that there was no basis to alter
      or amend the court's judgment under rule 59(e). (JA p. 308)

### **Summary of the Argument**

This case is ultimately about the free issuance of bonds without the vote of the people in violation of the Virginia Constitution and laws.

### **The Argument**

A. Standard of Review

As the District Case dismissed this case on a motion to dismiss based only on pleadings and law, the standard of review for all issues is de novo.

B. Motion to Intervene Was Erroneously Denied

Prince has set forth within his Motion to Intervene why Michael A. Prince should be allowed to intervene in this case. (JA p. 173)

Should Michael A. Prince be allowed to Intervene, then the issues brought forth in the VRA's Motion to Dismiss are moot.

The U.S. Supreme Court stated:

"The preclusive effects of a judgment in a federal-question case decided by a federal court should instead be determined according to the established grounds for nonparty preclusion described in this opinion.

*Taylor v. Sturgell*, 128 S. Ct. 2161, 171 L.Ed.2d 155, 553 U.S. 880, 904 (2008).

"Extending the preclusive effect of a judgment to a nonparty runs up against the "deep-rooted historic tradition that everyone should have his own day in court." *Richards v. Jefferson County*, 517 U.S. 793, 798, 116 S.Ct. 1761, 135 L.Ed.2d 76 (internal quotation marks omitted). Indicating the strength of that tradition, this Court has often repeated the general rule that "one is not bound by a judgment in personam in a litigation in which he is not designated a party or to which he has not been made a party by service

of process." Hansberry v. Lee, 311 U.S. 32, 40,  61 S.Ct. 115,  85 L.Ed. 22.
Pp. 2171 – 2172."

*Taylor v. Sturgell*, 128 S. Ct. 2161, 171 L.Ed.2d 155, 553 U.S. 880, 881 (2008).

> "The doctrine of res judicata rests at bottom upon the ground that the party
> to be affected, or some other with whom he is in privity, has litigated or had
> an opportunity to litigate the same matter  in a former action in a court of
> competent jurisdiction. *Southern  Pacific R. R. Co. v. United States*, 168 U.
> S. 1, 48; Greenleaf Ev.,  Section(s) 522-523. *The opportunity to be heard is
> an essential  requisite of due process of law in judicial proceedings*. *Wind-
> sor  v.  McVeigh*, 93 U. S. 274, 277; *Louisville & Nashville R. R. Co. v.
> Schmidt*,  177 U. S. 230, 236; *S*imon v. Craft*, 182 U. S. 427, 436. And as a
> State may not, consistently with the Fourteenth Amendment, enforce a
> judgment against a party named in the proceedings without a hearing or an
> opportunity to be heard (*Pennoyer v. Neff*, 95 U. S. 714, 733; *Scott v.
> McNeal*, 154 U. S. 34, 46; *Coe v. Armour Fertilizer Works*, 237 U. S. 413,
> 423), so it cannot, without disregarding the requirement of due process, give
> a conclusive effect to a prior judgment against one who is neither  a party
> nor in privity with a party therein. 247 U. S., at 476."

*Richards v. Jefferson County Alabama*, 517 U.S. 793, 797, 116 S.Ct. 1761, 135
L.Ed.2d 76 (1996).

Michael A. Prince was never provided an opportunity to be heard in the case

before this court.


C. Appellee Failed to Timely Raise the Preclusion Defense


The "earliest possible moment" at which the VRA could have raised collat-

eral estoppel or issue preclusion was in its Motion to Dismiss, Document 17, filed

11/05/2013, in which it did not.

Only in its Memorandum of Law, Docket # 24, (JA p. 164) filed 01/31/2014, which is properly not even part of the Appendix in this case, does VRA cite claim preclusion as barring this action. Not once is collateral estoppel or issue preclusion mentioned. Thus the VRA thereby waived its opportunity to raise that defense.

> "Even when a preclusion defense is not available at the outset of a case, a party may waive such a defense arising during the course of litigation by waiting too long to assert the defense after it becomes available. See Arizona, 530 U.S. at 413, 120 S.Ct. 2304 (*holding that party could not raise preclusion as a defense when party could have raised the defense earlier in the proceedings but did not, "despite ample opportunity and cause to do so"*); Davignon v. Clemmey, 322 F.3d 1, 15 (1st Cir.2003) (holding that district court abused its discretion by allowing defendant to assert preclusion defense "at the eleventh hour"); Aetna Cas. & Sur. Co. v. Gen. Dynamics Corp., 968 F.2d 707, 711 (8th Cir.1992) (holding that preclusion defense which was not available at the outset of litigation had to be "raised at the first reasonable opportunity after the rendering of the decision having the preclusive effect"); Home Depot, Inc. v. Guste, 773 F.2d 616, 620 n. 4 (5th Cir.1985) ("Even if it is not practicable to raise [preclusion as an affirmative defense] in the pleadings, the party wishing to raise the defense is obliged to assert it at the earliest moment practicable."); Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 47 (2d Cir.1983) (*"[T]he party wishing to raise [preclusion as a] defense is obliged to plead [it] at the earliest possible moment*.") (citation omitted).
>
> Upon consideration of the parties' arguments, we agree with Georgia–Pacific that von Drehle's failure to timely assert the preclusion defenses based on the Myers judgment effected a waiver of those defenses. Manifestly, the facts and dates [710 F.3d 534]recited above show that *von Drehle did not raise its preclusion defenses "at the first reasonable opportunity," Aetna, 968 F.2d at 711, much less at the "earliest possible moment," Evans*, 704 F.2d at 47; Home Depot, 773 F.2d at 620 n. 4."

*Ga. Pac. Consumer Prods., LP v. Von Drehle Corp.*, 710 F.3d 527, 533 (4th Cir., 2013).

D. 28 U.S.C. § 1738 - Full Faith and Credit

"Importantly, the *res judicata* effect of a judgment applies not just to future claims in the forum issuing the judgment, but also extends to future claims in all federal and state courts. Congress has codified this principle in 28 U.S.C. § 1738, which requires that state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken."

Federal courts applying this principle use a two-step test to assess the preclusive effect that a prior state court decision has on a pending federal action. See *In re Genesys Data Tech., Inc.*, 204 F.3d 124, 128 (4th Cir. 2000). First, federal courts "must look to state law to determine the preclusive effect of a state court judgment." Id. at 128. If state preclusion doctrine would not bar relitigation of an issue or claim from the earlier state proceeding, the analysis ends. See id. *If, however, the state court proceeding would preclude the second action under state law, a federal court must then determine whether Congress has created an exception to the operation of § 1738 for the cause of action pending in federal court.* See id.
"In the event the state's preclusion doctrine bars relitigation of the claim or issue, and if Congress has created no applicable exception to § 1738, then the federal action is precluded by the prior state proceeding. These general principles provide the framework for analysis of defendant's *res judicata* arguments."

*Martin-Bangura v. Virginia Dept. of Mental Health*, 640 F. Supp. 2d 729, 735-736 (E.D. Va., 2009).

E. Federal False Claims Act 31 U.S.C. §§ 3729 – 3733(d)

*Exclusion.*— This section does not apply to claims, records, or statements made under the Internal Revenue Code of 1986

As delineated above, under 28 U.S.C. § 1738, the court must determine if

there is an exception to § 1738. The U.S. Congress has intended the Fraud Against

Taxpayers Act to reach all fraud against the federal government and has offered a single exclusion to the reach of the False Claims Act: fraud on the IRS. It has not extended the exclusion to State Court Rulings. If Congress had intended other exclusions, they must have been listed. "[W]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, *in the absence of evidence of contrary legislative intent.*" *Andrus v. Glover Constr. Co.,* 446 U.S. 608, 616-17, 100 S.Ct. 1905, 64 L.Ed.2d 548 (1980) (emphasis added). The Supreme Court has also held:

> "We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.:"
>
> *Consumer Product Safety Commission et al. v. GTE Sylvania, Inc. et al.*, 447 U.S. 102, 108 (1980).

> "[I]n interpreting a statute a court should always turn to one cardinal canon before all others. . . .[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there."
>
> *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253- 254 (1992).

Therefore when properly applying the rules of statutory construction, the state court rulings are inadmissible in Federal Fraud Against Taxpayers cases. This case is the quintessential example why this exclusion should not extend to state court actions in that the adverse ruling, though clearly inappropriate, protected the State agency and local governments. In 2000, Justice Stevens, with whom Justice

PAGE 15

Souter joins, dissenting in *Vermont Agency Nat. Resources v U.S.*, 529 U.S. 765,

120 S.Ct. 1858, 146 L.Ed.2d 836 (2000), stated:

> "Thus, in United States v. Neifert-White Co.,  390 U.S. 228, 232 (1968), after noting that the Act was passed as a result of investigations of the fraudulent use of federal funds during the Civil War, we inferred "that the Act was intended to reach all types of fraud, without qualification, that might result in financial loss to the Government." See also Rainwater v. United States, 356 U.S. 590, 592 (1958) ("It seems quite clear that the objective of Congress [in the FCA] was broadly to protect the funds and property of the Government from fraudulent claims"); H. R. Rep. No. 99_660, p. 18 (1986) ("[T]he False Claims Act is used as the primary vehicle by the Government for recouping losses suffered through fraud"). Indeed, the fact that Congress has authorized qui tam actions by private individuals to supplement the remedies available to the Federal Government provides additional evidence of its intent to reach all types of fraud that cause financial loss to the Federal Government. Finally, the breadth of the "claims" to which the FCA applies  only confirms the notion that the law was intended to cover the full range of fraudulent acts, including those perpetrated by States."

*Vermont Agency Nat. Resources v U.S.*, 529 U.S. 765, 858, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000).


F. <u>VRA is Not in Privity with Banks Because the VRA was Immune From Suit</u>

> "One of the fundamental prerequisites to the application of the doctrine of res judicata is that there must be an identity of parties between the present suit and the prior litigation asserted as a bar. A party to the present suit, to be barred by the doctrine, must have been a party to the prior litigation, or represented by another so identified in interest with him that he *represents the same legal right*.

*Leeman v. Troutman Builds, Inc.,* 260 Va. 202, 206, 530 S.E.2d 909, 911 (2000).

The VRA was never listed as a defendant in the lease purchase State complaint or served in any FATA case. VRA does not stand in privity because it is *immune from prosecution* under Virginia Code § 8.01-216.8 in the

Virginia's Fraud Against Taxpayers Act:

> § 8.01-216.8. Certain actions barred.
>
> No court shall have jurisdiction over an action brought under this article against any department, authority, board, bureau, commission, or agency of the Commonwealth, *any political subdivision of the Commonwealth.*

The VRA simply can't exert its sovereignty in one instance (State FATA), then say they are held in privity with the bank and that the bank represented their same legal right in the current federal case. Any ruling against the bank could not have been enforced against the VRA. Immunity precludes privity, so the bank, therefore, did not represent the same legal right as the VRA, which was never served in any State FATA case and therefore fails the fundamental prerequisite of *res judicata*.

G. <u>Issue Preclusion</u>

Prince has set forth within his Motion to Reconsider, Docket # 37, why issue preclusion would not apply in this case: primarily because there are additional issues that were never addressed by the State Court, and because the proposed amended State complaints, which motions to amend were never granted, were er-

roneously quoted throughout the lower court's memorandum opinions. Furthermore, the Final Order in the State FATA cases reflect the challenge to only Shenandoah County and no other public projects.

Note there was no submission of any evidence or documents supporting Prince's position in Shenandoah County Circuit Court and that court refused his 70 page Power Point presentation and 28 exhibits that supported his position. Accordingly, there can be no verification of any documents or record that would support VRA's position. Additionally no transcripts are available from that hearing.

Issue preclusion is based upon Virginia law and is clearly outlined in *Martin-Bangura v. Virginia Dept. of Mental Health*, 640 F. Supp. 2d 729 (E.D. Va., 2009). which states:

> "A. Issue Preclusion:  Analysis of the parties' issue preclusion dispute appropriately begins with a summary of Virginia law on this doctrine. In Virginia, "[t]he doctrine of collateral estoppel precludes the same parties to a prior proceeding from litigating in a later proceeding any issue of fact that actually was litigated and was essential to the final judgment in the first proceeding," and this doctrine applies notwithstanding that the causes of action or the relief sought in the two proceedings may differ. Whitley v. Commonwealth, 260 Va. 482,  538 S.E.2d 296, 299 (2000) (citations omitted). In Whitley, the Supreme Court of Virginia enumerated four elements that must be satisfied before a party can invoke the doctrine of issue preclusion: (1) the parties to the two proceedings must be the same; (2) the factual issue sought to be litigated must have been actually litigated in the prior proceeding; (3) the factual issue must have been essential to the judgment rendered in the prior proceeding; and (4) the prior proceeding must have resulted in a valid, final judgment against the party to whom the doctrine is sought to be applied.  *And it is the party seeking to preclude a factual issue that bears the burden of demonstrating that these four elements are satisfied.* See Bates v. Devers, 214 Va. 667,  202 S.E.2d 917, 921 (1974). Moreover, it is also set-

tled that where a party in the second suit is in privity with a party from the first suit, the first element of issue preclusion is met. Whitley, 538 S.E.2d at 300.

   The most commonly disputed elements of issue preclusion-elements 2 and 3- require that the issue to be precluded *must have been precisely the same issue* that was previously litigated and the issue previously litigated must have been essential to the judgment in the first case.  See id. (determining that factual issues underlying a plaintiffs state court claim had been both actually litigated in a previous federal action and essential to the federal court's judgment before concluding that collateral estoppel applied); see also Angstadt v. Atl. Mut. Ins. Co., 249 Va. 444,  457 S.E.2d 86, 88 (1995) (holding trial court erred in applying doctrine of collateral estoppel in part because the factual issues litigated in the first action were not identical to the issues in the second proceeding)."

*Martin-Bangura v. Virginia Dept. of Mental Health*, 640 F.Supp.2d 729, 736 (E.D. Va., 2009).

   The District Court and VRA are trying to combine all of the factual issues

Prince has brought forward into the single central spindle or allegation which is

"the bonds were issued illegally."  This is simply not the case, and a few of the

separate distinct factual issues are set forth herewith:

1.  Prince is claiming that the local governments cannot enter into these

    agreements or contracts with the VRA (not the bond which was issued

    by the VRA) using moral obligations because local governments are not

    given that right by the Constitution or Code. (Note: these are separate

    and distinct contracts and bond issuances and use separate issues, fact

    and legal theory.)

2.  Virginia Code Sec. 15.2-1816, the code giving authority to the local governments the ability to enter into lease agreements was not implemented until July 2011, years after the application for the Build America Bonds subsidies. Just the implementation date of this code alone will give proof that a false claim was submitted to the Federal Government for subsidies tripping the False Claims Act. This is a separate, distinct issue. Virginia Code Sec. 15.2-1816 was never even mentioned in the State cases.

3.  False statement that a mandamus which ordered the building of a new courthouse trips the False Claims Act. This issue was never claimed in the initial complaint or even the amended complaint in State Court.

4.  Prince is also claiming that the VRA is not authorized to issue the "bonds" because of restrictions in the Virginia Constitution. See Amended Complaint, Docket # 11, paragraphs 21 and 22. This illegal bond issuance by the VRA was not claimed in the only motions for judgment that were before the Shenandoah County Circuit Court. Virginia Resources Authority did not have the authority to enter into these agreements because of the restrictions set forth in Article X, Section 10 of the Virginia Constitution.

A full list of such issues are found in Prince's amended complaint, Docket #
11. Furthermore, each of the State FATA claims attack separate, distinct types of
contracts, namely the Service Agreement, Lease Purchase Agreement and a Reve-
nue Bond. A cross referencing of claims from one case to the other, as the VRA
has done, simply does not work, because authorization for each comes from sepa-
rate distinct sections of the Virginia Constitution and Code. One must stick to the
case at hand, following rules of Virginia and look to the original pleadings, and the
only pleading admitted from Virginia case CL12-276 which is relevant is Exhibit 5
at Docket 30,  (JA p. 214) filed 02/21/14, the "Initial motion for judgment," and
compare that with Prince's amended complaint found in case 5:13-cv-00045-MFU.
They are different in numerous ways.

Collateral estoppel stops the *factual issue* sought to be litigated *that was ac-
tually litigated* in the prior proceeding, according to the Supreme Court of Virgin-
ia.  *Whitley v. Commonwealth*, 260 Va. 482, 489, 538 S.E.2d 296, 299 (2000). The
following Virginia Code was used in the State Case to bring the cause of action:

> Virginia False Claims Code § 8.01-216. False claims; civil penalty.
> A. Any person who:
> 6. Knowingly buys or receives as a pledge of an obligation or debt, public
> property from an officer or employee of the Commonwealth who lawfully
> may not sell or pledge the property;

When applying issue preclusion, the factual issues litigated in the first action must be *identical* to the issues in the second proceeding. Since we have separate, distinct factual issues, such will prevent the application of issue preclusion.

Issues are not documents, and documents can be used to support different issues. Document preclusion falls under claim preclusion, and that issue was settled in Prince's favor. Claim preclusion fails because the federal charge couldn't be brought in the State Court.

Under *qui tam*, pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3729, Prince alleged that the VRA made false claims to the United States in applications for Build America Bond subsidies, which is the trigger for a federal false claim. What is required is a false statement in the application, which was submitted and found in Prince's Amended Complaint, Docket # 11, in Exhibit J: "Copies of all documents sent to the Federal Government for the Build America Bond Program from the Virginia Resources Authority." This is clearly different than what is required for the State FATA cases.

In contrast with the federal claim, the State case requires different documents to prove the false claim. The State case requires the document showing the signature of the agent of the Bank who purchased an obligation from an Officer of the Commonwealth of Virginia who was not authorized to issue it. This document is required for the State and not the federal case.

By issuing the bonds under the auspices of the Securities and Exchange Commission, the VRA and other defendants certified the legality of the bonds issuances—also a requirement of the BAB program. This is also completely different than what is required by the State FATA cases.

Under Federal FATA a "statement or omission is "capable of influencing" a decision even if those who make the decision are negligent and fail to appreciate the statement's significance." *U.S. v. Rogan*, 517 F.3d 449, No. 06-4144, p. 3 (7th Cir., 2008).

> "The court rejected lack of materiality by decision maker negligence, explaining that a "statement or omission is 'capable of influencing' a decision even if those who make the decision are negligent and fail to appreciate the statement's significance." Id. As the court stated, "[t]he question is not remotely whether [the applicant] was sure to be caught ... but whether the omission could have influenced the agency's decision." In short, even if a program officer does not subjectively consider a statement to be material, it can be found to be material from an objective standpoint because it is "capable of influencing" the program officer.
>
> As the plaintiff in this case argues, *materiality is "determined* not by what a program officer at NIH declares material, *but rather [is] based on the agency's own rules and regulations.*" Pl.'s Br. at 48."

*United States ex rel. Feldman v. Van Gorp*, 697 F.3d 78, No. 10-3297, p. 40 (2nd Cir., 2012).

> "Another way to see this is to recognize that laws against fraud protect the gullible and the careless—perhaps especially the gullible and the careless— and could not' serve that function if proof of materiality depended on establishing that the recipient of the statement would have protected his own interests. See *United States v. Rosby*, 454 F.3d 670 (7th Cir.2006). The United

States is entitled to guard the public fisc against schemes designed to take advantage of overworked, harried, or inattentive disbursing officers; the False Claims Act does this by insisting that persons who send bills to the Treasury tell the truth. As Justice Holmes put it, "[mien must turn square corners when they deal with the Government." Rock Island, Arkansas & Louisiana R.R. v. United States, 254 U.S. 141, 143,  41 S.Ct. 55,  65 L.Ed. 188 (1920).

*U.S. v. Rogan*, 517 F.3d 449, No. 06-4144, pp. 3-4 (7th Cir., 2008).

The false statements issued by the VRA are in violation of the SEC/EMMA and BAB rules and regulations, and thereby material to the False Claims Act.

"The Act does not create a cause of action against all fraudulent conduct affecting the government. Karvelas, 360 F.3d at 225. Rather, FCA *liability attaches to a "false or fraudulent claim for payment" or to a "false record or statement [made] to get a false or fraudulent claim paid" by the government.* 31 U.S.C. § 3729(a)(1)-(2); see also Karvelas, 360 F.3d at 225 ("*Evidence of an actual false claim is `the sine qua non of a False Claims Act violation.'"*) (quoting United States ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1311 (11th Cir. 2002)). FCA liability does not attach to violations of federal law or regulations, such as marketing of drugs in violation of the FDCA, that are independent of any false claim."

*U.S. ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 727 (1st Cir., 2007).

Prince has provided the court with a *sine qua non* by showing that Virginia Code Sec. 15.2-1816 was instituted *after* the request for federal BAB subsidies, that the local governments are not authorized to issue moral obligations, and that the VRA is not authorized to issue bonds for capital improvement projects of local government, and, finally, the false mandamus. An FCA cause of action of this sort requires proof of three elements: (1) the defendant made a record or statement in

order to get the government to pay money; (2) the record or statement was false or fraudulent; and (3) the defendant knew it was false or fraudulent. See 31 U.S.C. § 3729(a)(2). *U.S. ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013 (C.A.7 (Wis.), 1999).

The first element in the current case was that the defendant VRA made a record and statement in order to get the government to pay money through the BAB program, then actually received moneys. The second element was the statement (independent of the State case) stating that the issuance complied with the laws of Virginia (to include the requirement of the BAB program to comply with SEC regulations, which has the additional requirement that the bonds be legal and no false statements can be made), and that there was a mandamus ordering the courthouse to be built, which was false. The final element was the implementation of Virginia Code Sec.15.2-1816 *after* the issuance of the BAB bonds/contracts.

Nowhere in the Virginia Code or Constitution are moral obligations allowed to be issued by local governments; and there is an actual letter from Shenandoah County's Attorney stating that there was no mandamus after the submission of the application for the BAB subsidies. These are other issues that the VRA seeks to foreclose that were not issues in the State cases. Therefore, these separate issues should be allowed to proceed.

The party seeking the protection of collateral estoppel has the burden of "proving that the precise issue or question he seeks to preclude was raised and determined in the first action." *Clodfelter v. Commonwealth*, 218 Va. 98, 106, 235 S.E.2d 340, 345, Reversed on other grounds, 218 Va. 619, 238 S.E.2d 820 (1977); *Simon v. Comm*., 258 S.E.2d 567, 220 Va. 412 (Va., 1979).

In Document 34, filed 04/15/14, in note 5, the lower court quotes "Rule 1:6, the Supreme Court of Virginia has discarded the same-evidence and same remedy requirements, adopting instead a *same conduct, transaction, or occurrence test*." The court below misapplied this interpretation to issue preclusion as it should have been applied to Cause of Action as seen below in Virginia Supreme Court Rule 1:6. Yet, the court correctly interpreted Prince's claim as a separate cause of action when it stated in the first paragraph on page 8 of document 34, dated 04/15/14: "Claim preclusion does not apply in this case because the conduct, transaction, or occurrence at issue in this federal action consists of the alleged false statements made to the United States government." This cause of action is different primarily because it could not have been brought in the State court.

RULE 1:6. Res Judicata Claim Preclusion.

(a) *Definition of Cause of Action.* A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, shall be forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, whether or not the legal theory or rights assert-

ed in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended, or the particular remedies sought. A claim for relief pursuant to this rule includes those set forth in a complaint, counterclaim, cross-claim or third-party pleading.

(b) *Effective Date.* This rule shall apply to all Virginia judgments entered in civil actions commenced after *July 1, 2006.*

(c) *Exceptions.* The provisions of this Rule shall not bar a party or a party's insurer from prosecuting separate personal injury and property damage suits arising out of the same conduct, transaction or occurrence, and shall not bar a party who has pursued mechanic's lien remedies pursuant to Virginia Code § 43-1 et seq. from prosecuting a subsequent claim against the same or different defendants for relief not recovered in the prior mechanic's lien proceedings, to the extent heretofore permitted by law.

Virginia Supreme Court Rule 1:6.

"Collateral estoppel is a preclusion doctrine "grounded in the Fifth Amendment guarantee against double jeopardy." Rhodes, 223 Va. at 747, 292 S.E.2d at 375. 8 "It stands for [the] extremely important principle in our adversary system of justice . . . that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."9 Ashe v. Swenson, 397 U.S. 436, 443 (1970). It does not state that other issues are restricted from litigation. Furthermore, *"[t]he party seeking the protection of collateral estoppel carries the burden of showing that the verdict in the prior action necessarily decided the precise issue he seeks to now preclude."* Rhodes, 223 Va. at 749, 292 S.E.2d at 376. Simon v. Commonwealth, 220 Va. 417, 418,  258 S.E.2d 567, 571 (1979).  However, *"[t]he doctrine . . . does not apply if it appears that the prior judgment could have been grounded 'upon an issue other than that which the defendant seeks to foreclose from consideration.'"* Lee v. Commonwealth, 219 Va. 1108  1111, 254 S.E.2d 126, 127 (1979) (quoting Ashe, 397 U.S. at 444). "Collateral estoppel becomes applicable only when the prior acquittal necessarily resolved the issue now in litigation."

*Simon v. Commonwealth*, 220 Va. 417, 418, 258 S.E.2d 567, 571 (1979).

As the Supreme Court stated in *Jones v. Commonwealth,* 217 Va. 231, 228 S.E.2d 127 (1979):

> Ashe requires that the question whether the rule of collateral estoppel applies in a given case is to be approached "with realism and rationality." The Court established these guidelines: "Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this [realistic and rational] approach requires a court to *'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.*" Id. at 233, 228 S.E.2d at 129 (alteration in original) (quoting Ashe, 379 U.S. at 444).

Under issue preclusion, the court must examine the record of the prior proceeding, and if there are no identical documents/evidence or issues not included in the original complaint, Prince must be allowed to proceed using those issues not in the original State motion for judgment.

The VRA has failed to allege sufficient facts from which the court may reasonably infer the precise issue to which they are trying to preclude as required. The VRA has also failed to specifically point out the issues to be precluded, which fails the fundamental requirement of preclusion, and thus fails collateral estoppel.

In Docket # 44, the District Judge ordered the VRA to address these issues in Prince's Motion to Reconsider, which squarely addressed collateral estoppel, and which the VRA did not respond to a single issue that was raised. Instead, the VRA collaterally attacked by claiming that Prince had no right to move for a reconsideration. This further solidifies VRA's failure of the requirement to point out

the precise issues to be precluded because they carry the burden of showing that the verdict in the prior action necessarily decided the precise issue VRA now seeks to preclude.

As in *Davis*, this insufficiency of the evidence is apparent by the refusal of the State Court to allow Prince to amend his complaint or allow any documents Prince attempted to submit to the State Court in support of his position. This refusal precluded any documents not submitted to the court, and anything found within the amended complaint, from estoppel. As in *Ashe*, the judgment of dismissal was based on insufficiency of the evidence which was self-induced by the State Court.

> "I would certainly require that the record show that the precise issue the defendant seeks to bar has been clearly and manifestly decided with a final decision in the prior proceeding. Case law governing collateral estoppel already requires no less." See Schiro, 510 U.S. at 236 (requiring a showing that the issue that the defendant seeks to preclude "was actually and necessarily decided in the defendant's favor" in the prior proceeding).

*Davis v. Commonwealth,* Record No. 1873-12-2, p. 16 (Va. App., 2014)

> The United States Supreme Court has held: [W]here a previous judgment of acquittal was based on a general verdict, courts must "examine the record of [the] prior proceeding, taking into account the *pleadings, evidence,* charge, and other relevant matter, *and conclude whether a rational jury could have grounded its verdict on an issue other than that which the defendant seeks to foreclose from consideration.*" Dowling, 493 U.S. at 350 (quoting Ashe, 397 U.S. at 444). Thus, if it appears that a rational factfinder could have based its verdict in the prior proceeding on resolution of an issue other than the issue that the defendant seeks to foreclose from consideration in the later proceeding, "*then collateral estoppel does not apply*." Rice, 57 Va. App. at 443, 703 S.E.2d at 258.

*Davis  v. Commonwealth* Record No. 1873-12-2, p. 16 (Va. App., 2014). Beales, J., dissenting.

When the record in this case is examined, it shows that there are issues other than the issue that the defendant seeks to foreclose which were never decided in a final verdict, so collateral estoppel cannot and does not apply.


 H. Claim Preclusion

> "Claim preclusion can never apply when the ostensibly barred claim falls outside the subject-matter jurisdiction of the tribunal and thus could not have been adjudicated in the prior action. See Lloyd v. Am. Motor Inns, Inc., 231 Va. 269, 271,  343 S.E.2d 68, 69 (1986); see generally Restatement (Second) of Judgments § 26(1)(c) (1982)."

*Virginia Imports v. Kirin Brewery,* 650 S.E.2d 554, 561, 50 Va. App. 395 (Va. App., 2007). The State Court could have never adjudicated this federal claim, so claim preclusion can not apply.


> We have previously recognized that the judicially created *doctrine of collateral estoppel does not apply when the party against whom the earlier decision is asserted did not have a "full and fair opportunity" to litigate the claim or issue,* Allen v. McCurry, 449 U.S., at 95, 101 S.Ct., at 415; Montana v. United States, 440 U.S. 147, 153,  99 S.Ct. 970, 973,  59 L.Ed.2d 210 (1979);  Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 328-329,  91 S.Ct. 1434, 1442-43,  28 L.Ed.2d 788 (1971).22  "*Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation."*  Montana v. United States, supra, at 164, n.11, 99 S.Ct., at 979, n.11.  Cf. Gibson v. Berryhill, 411 U.S. 564,  93 S.Ct. 1689,  36 L.Ed.2d 488 (1973)."

*Kremer v. Chemical Construction Corporation*, 456 U.S. 461, 480-481, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

Prince did not have a "full and fair opportunity to litigate" in the State Court. This is verified due to the refusal of the Virginia Circuit Court to allow the nonsuit, refusal of the court to allow the amended complaint and refusal to allow any evidence (power-point) documents or address the Amicus Curiae Brief. Therefore, redetermination of the issues are warranted since there is doubt of the quality, extensiveness, or fairness of procedures followed in the prior litigation.

I. Dismissal Against Unserved Defendants For Failure to Prosecute Was In Error

Prince has provided evidence, as set forth in the Amended Complaint, of wrongdoing by the VRA, and he should have been authorized discovery which would enable the addition of other defendants, should discovery provide evidence implicating other entities in this *federal false claim*. Most of these entities have never been named in any action by Prince. *Qui Tam* affords the Plaintiff the opportunity for discovery, which Prince has been denied.

A request for payment is required to prove a *qui tam* violation. Prince did not have the documents necessary showing a request for payment from the federal government by local Virginia State governments to list the other entities as defendants as shown in the Amended Complaint, nor does he have proof from the Federal

Government that they received any money's from the federal subsidies. There are many Virginia local governments that are receiving federal subsidies as set forth in the Amended Complaint which require discovery to uncover. When Mr. Prince submitted the Amended Complaint, which was entered into the record, only the VRA and "Others" were listed and service was only issued on the VRA.

In the courts memorandum opinion, (JA p. 308) filed 07/10/14, the court states: "Here, the claims against the un-served defendants were dismissed on the basis of Prince's failure to prosecute."

Prince provided evidence of a single submission by the VRA for federal subsidies and showed the possibility of other submissions by local governments. Prince must have evidence implicating the Other Defendants before they can be listed, which requires proof, hence the need for discovery and the freedom to amend complaints. To do otherwise would be wasting the court's time and the Defendants, and is contrary to the intent of Congress, which is to seek out perpetrators of fraud against the government.

The court listed four reasons that compel the court to dismiss with prejudice for lack of prosecution including, on page 13: "(4) the impotency of any action short of dismissal with prejudice." Prince's Motion to Amend cures any impotency with earlier versions, and bridges the gap which the District Court is ignoring. Should this court find that the case can proceed from the proper application of col-

lateral estoppel principles, then the foundation of the lower court's opinion crumbles and this factor is moot.

Prince could agree to the lower court's decision if the case had actually been litigated, and had Prince not requested the nonsuit. But the case had not been litigated, and Prince had requested a nonsuit.

In *re Natural Gas Royalties Qui Tam Litigation*, 467 F. Supp. 2d 1117 (D. Wyo., 2006). This case and many others show that additional "Other" non initially named defendants can be added in a qui tam case after the 120 day limit.

> "In April of 1995, Relator filed a qui tam action in the United States District Court for the District of Columbia against forty-four defendants, alleging that they had defrauded the federal government by underpaying royalties on gas purchased from federally owned or Indian lands. Relator asserted that the underpayments were the result of mismeasurement of gas volume and improper analysis of gas, heating content. The 1995 Qui Tam Complaint identified a number of mismeasurement techniques, and asserted that each of the defendants employed one or more of them.
>      Relator amended the 1995 Qui Tam Complaint to add defendants and mismeasurement techniques. An Amended Complaint filed on December 7, 1995, and a Second Amended Complaint, filed on May 13, 1996, each named several new defendants, ultimately bringing the total number of defendants sued in the 1995 action to 70."

In *re Natural Gas Royalties Qui Tam Litigation*, 467 F. Supp. 2d 1117, 1127 (D. Wyo., 2006)

Should this decision stand, all further evidence showing illegal activities by any defendant uncovered by the U.S. Government or Relator after 120 days will be inadmissible even after discovery, thereby negating discovery and congressional

intent to root out fraud for any other possible defendants in future *qui tam* cases after 120 days. Prince requests that this court allow an amended complaint to be submitted which includes all possible defendants after a period of discovery.

J. <u>District Court Improperly Denied Reconsideration Pursuant to Rule 59(e)</u>

There are three items that the 4th Circuit considers under 59(e), according to

"We first consider whether the district court erred in denying Appellant's motion pursuant to Rule 59(e). This court reviews the denial of a Rule 59(e) motion under the deferential abuse of discretion standard. *Ingle ex rel. Estate of Ingle v. Yelton,* 439 F.3d 191, 197 (4th Cir. 2006). Rule 59(e) provides that a court may alter or amend the judgment if the movant shows either (1) an intervening change in the controlling law, (2) new evidence that was not available at trial, or (3) *that there has been a clear error of law or a manifest injustice.*

*Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 407 (4th Cir. 2010).

In the lower courts memorandum opinion, (JA p. 308) filed 07/10/14, the court states:

"Nowhere in his motion does Prince assert either a change in the law, the discovery of new evidence that was previously unavailable, or *a legal error so clear or the risk of an injustice so manifest that it provides a basis for invoking the "extraordinary remedy"* of altering or amending the final judgment of the court. In short, Prince simply argues that the court got it wrong. This is plainly an insufficient basis for a Rule 59(e) motion."

Prince clearly points out in his motion for reconsideration that there has been *a clear error of law* by the lower court upon which its decision was based upon (documents the court relied upon and quoted that were not admitted to the State

FATA cases) which suffices the 3rd requisite in *Robinson v. Wix Filtration Corp.*

*LLC*.

> "We review the District Court's denial of a motion to alter or amend a judgment pursuant to Rule 59(e) for abuse of discretion, "except over matters of law, which are subject to plenary review." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir.2001). The scope of a motion for reconsideration, we have held, is extremely limited. Such motions are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence." H*oward Hess Dental Labs., Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237, 251 (3d Cir. 2010). *"Accordingly, a judgment may be altered or amended [only] if the party seeking reconsideration shows at least one of the following grounds:* (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) *the need to correct a clear error of law or fact or to prevent manifest injustice*." Id. (quotation marks omitted) (emphasis added)."

*Blystone v. Horn*, 664 F.3d 397, 415 (3rd Cir. 2011).

> We typically review a district court's dismissal of a Rule 59(e) motion only for abuse of discretion. See *Ysais v. Richardson*, 603 F.3d 1175, 1180 (10th Cir.2010) ("We review a district court's denial of a Fed.R.Civ.P. 59(e) motion for reconsideration under an abuse of discretion standard." (quoting *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir.2009)) (internal quotation marks omitted)). However, "[t]he abuse [693 F.3d 1202]of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1178 (10th Cir. 2011) (quoting *Loughridge v. Chiles Power Supply Co.*, 431 F.3d 1268, 1275 (10th Cir. 2005)) (internal quotation marks omitted). Consequently, we are obliged to review the merits of purely legal jurisdictional arguments de novo in order to ensure that the district court did not abuse its discretion by making a "*clear error of judgment or exceed[ing] the bounds of permissible choice in the circumstances.*" Id. (quoting *Loughridge*, 431 F.3d at 1275) (internal quotation marks omitted)."

*Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1201-1202 (10th Cir. 2012).

<u>Conclusion</u>

For the reasons set forth herein, this Court should reverse the decision on review and remand to the district court for further proceedings.

<u>Request for Oral Argument</u>

Oral argument is requested.

Respectfully submitted,

MARK W. PRINCE

By counsel

/s/_*Bradley G. Pollack*__/s/

Bradley G. Pollack
Attorney at Law
753 South Main Street
Woodstock, VA 22664
bpollack@shentel.net
540-459-8600
540-459-8670 (fax)
Virginia State Bar No. 25290

<u>Certificate of Service</u>

I certify that on September 24, 2014, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Jeffrey Murray Summers
THE LAW OFFICES OF
JEFFREY M. SUMMERS, PLLC
Suite 410
6802 Paragon Place
Richmond, Virginia 23230-1655

s/_____                    <u>9/24/2014</u>

      *Bradley G. Pollack*                              *Date*

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 14-1690        Caption: U. S. ex rel. Mark W. Prince v. Virginia Resources Autho

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

    This brief complies with the  type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    ☐    this brief contains _____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    ☐    this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☐    this brief has been prepared in a proportionally spaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*]; **or**

    ☐    this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) Bradley Glenn Pollack

Attorney for Mark W. Prince

Dated: 9/24/2014